District Court for the Eastern District, Virginia, sitting by designation of the Chief Justice, and we appreciate his assistance. Our first case this morning is 08-5187, Easter v. the United States District Court. Mr. Bernstein. Thank you, Your Honor. May it please the Court, my name is Jules Bernstein. I am accompanied by my co-counsel and wife, Linda Lipset, and my co-counsel, Edgar James. The instant appeal arises out of a final order of the United States Court of Federal Claims granting summary judgment to appellee United States. Appellant employees believe that notwithstanding two prior decisions of this court, namely Bobo and Adams, which hold that required driving between home and work by certain federal employees to be non-compensable under the Fair Labor Standards Act, recent decisions of the Supreme Court in Brandeis and Koch, and of this court in Patterson, Hawkins, and Billings, have significantly altered the legal landscape, thereby requiring the conclusion that appellant employees' required home driving is FLSA-compensable. As to Billings, this court squarely held that the FLSA must be applied in the federal sector consistently with its application by the United States Department of Labor in the non-federal sectors unless it would be unreasonable to do so. Here, in several utterances, the United States Department of Labor has declared that required home work driving by employees is FLSA-compensable. These Labor Department statements include a 1995 opinion letter by the administrator of the Wage and Hour Division declaring required driving of employer vehicles between home and work sites to be FLSA-compensable, a provision of the Department of Labor FLSA Field Operation Handbook declaring required home work driving by ambulance drivers to be FLSA-compensable, and a DOL regulation at 29 CFR 553.221, which is applicable in the non-federal public sector, which declares that a police officer who is, and I'm quoting, given a patrol car to drive home and use on personal business is not working during the travel time, even where the radio must be left on so that the officer can respond to emergencies. So the important point there is that the Labor Department has, across the board, said that required and restricted home-to-work driving by employees, both in the private sector and in the non-federal public sector, is FLSA-compensable. And under billings, and under AFGE versus OPM as well decided by the D.C. Circuit in 1987, the federal government must apply the Fair Labor Standards Act to its employees consistently with the manner in which the Department of Labor applies it to other employees. So under billings, we say that the Labor Department rules must apply. Indeed, we also say that the regulations of the Office of Personnel Management specifically provide at 5 CFR 551.401 that all time spent by a federal employee performing an activity for the benefit of an agency and under the control and direction of the agency is hours of work. Now, being required to drive the government's vehicle from home to work fits within that, and in particular, our clients are not permitted to use the cars for personal business. And if they do, they are subject to suspension and discharge. And under federal law, those cars may only be used for home-to-work travel without any diversion for personal use, which is a no-no. What do you say about the, I have two questions really. The first is the provision of 551.422, and I think it's B, that talks about commuting, the general principle that commuting is not work. And the second is the website of OPM, you cited that in your reply brief, which specifically says that construing that regulation, that FLSA work covered employees commuting time from home to work and from work to home are not hours of work, and then skipping down. The fact that an employee is driving a government vehicle and commuting to and from work is not a basis for determining that commuting time is hours of work. Yes. First, as to normal home-to-work driving, this is not normal home-to-work driving. Our clients must get, when they get into their car, they must go directly to their work site. They may not drive their child to school. They may not drop their wife off. They may not decide to come to work by metro. They must drive that vehicle. They are required to drive that vehicle. And in this particular case, they are driving vans with 1,000 pounds of equipment. That is not normal home-to-work commuting, or driving for that matter. That is working for the employer. And that's the difference with regard to normal home-to-work driving. Now, I might say— Why isn't that covered by the language that I just read about the fact that an employee is driving a government vehicle is not a basis for determining that commuting time is hours of work? When you're reading in, it seems to me, some exception for cases in which the employee is not permitted to engage in personal business during the course of the commute. That is true, Your Honor. First, if you go back to the— It is true that you're reading that in. Oh, no, I'm not. Because if you look at that guidance, it says, at page 15 of our brief, for FLS— Reading from the reply brief? Pardon? You're looking at the reply brief? At page 15 of our reply brief? Right. For FLS, this is the same guidance that you made reference to. By the way, the guidance was adopted after the Bobo case. So it was acknowledging the Bobo case. But let me also— That's perfectly permissible for the agency to decide that this— No, but it's subject to our— Pardon? It's subject to our deference, A-U-E-R, the Seminole Rock deference, right? But— You understand what I mean, our Seminole Rock? Because of brand X, that distinction is out the window because it's the agents— So OPM may not deviate to begin with. But if you look at the DOL reg, the reg says normal home-to-work driving is non-compensable. But if the employee is permitted to divert, use it for personal business, then it's non-compensable. The negative pregnant of that is if he may not use it for personal business, it is compensable. That's the Labor Department regulation. But as you say, you have to rely on a negative pregnant in that. There isn't anything more— But the Labor Department's— Mr. Bernstein, would you please let the judge finish before you start talking? Of course. Well, let me see if I understand. You rely, I think, principally on the 95 letter from the Labor Department. Isn't that the principle reliance, the most direct support for a position? Well, I would say—I'm sorry. The ambulance driver— You're not dealing with ambulance drivers here, right? Well, the principle is the same as to the ambulance driver who takes his ambulance home. The Labor Department says that employee, if required to take the ambulance home, is entitled to be compensated. But that's in a section called something like special considerations or special cases, right? Special problems is the category that the ambulance driver is listed under. Well, it's in the Labor Department's field manual. Right. So those are a category called special problems, which suggests, at least to me, that there is something that the department is identifying as a special circumstance with ambulance drivers. I'm not certain what that would be, Your Honor. But let me go back to your other question. And that is with regard to the OPM guidance. And there it says, at page 15, an employee is required to work during travel by being required to drive a government vehicle as part of a work assignment. Now, that is where we are. This is a work assignment. You take the van home. You have 1,000 pounds of equipment in it. You then go to the job. And so that is the assignment. And so that is within the guidance as well. So you have to read the totality of the guidance further. There's language. However, commuting time may be hours of work to the extent that the employee is required to perform substantial work under the control and direction of the employing agency, i.e., productive work of a significant nature that is an integral and indispensable part of the employee's principal activities. Well, that gets you over to the Portal Act, where integral and indispensable activity is declared to be an exception. The Supreme Court's decision in Steiner and in King Packing. In King Packing, the employees sharpened their knives before they went into the plant to carve up the meat. And so the Supreme Court said that the knife sharpening was integral and indispensable and, therefore, compensable. Here, they are taking this 1,000 pounds of equipment from the job home, then hauling. They're engaged in hauling this equipment. So that constitutes work in anybody's book. Well, let's hear from the government now, and then we'll give you a full rebuttal time back. Surely, Your Honor. Thank you. Mr. Brilliant. May it please the Court, I'm Shalom Brilliant with the Department of Justice on behalf of the government. The decision of the court below was the only possible decision consistent with the binding precedent of this court as enunciated in Bobo and Adams. The thrust of Appellant's case is that Bobo and Adams are both wrongly decided and should be overruled by this court. Mr. Bernstein states that the legal landscape has been significantly altered since those decisions, but, in fact, it hasn't been altered at all. The cases that were referred to, some of which I believe were actually issued before the Adams decision, but, in any event, they stand for propositions which I think were true before Adams was decided, as they are now, concerning the general principle that courts owe deference to agency interpretations of the regulations that they administer, and specifically dealing with what's often known as Chevron deference. But there's really no deference issue in this case. Appellant's argument assumes that in Adams, well, essentially that what happened was Adams deferred to Bobo, and Bobo did not defer to either OPM or DOL interpretations of the FLSA as embodied in their regulations, and that's not what happened. There's no issue of deference. What essentially happened is that in those cases the appellants took a certain position as to what the regulations meant, and this is the position that appellants in this case advocate as well, but in Bobo and Adams, the trial courts and this court simply did not accept appellants' interpretation of what the agency interpretation was. The courts did not read the regulations the way appellants did. Now, there are, at a lower level of agency interpretation, there have been references made to the Wage and Hour Division opinion letter. That's the April 4, 1995 opinion letter? Right. These are, as Your Honor suggested, opinions concerning special cases. They're not regulations. They don't deal directly. None of these, as well as, by the way, the regulation that Mr. Bernstein cited, 29 CFR 553.221, even there relies, the argument relies on this negative pregnant. The regulation itself describes a situation and says in that situation the driving is not compensable. It doesn't say that if you alter the situation in specific ways, then it is compensable. The regulation just doesn't address that question, and that's not even an OPM regulation. That's a DOL regulation. The decisions of this court, Mr. Bobo decision, relied to a large extent on the Second Circuit's decision in Reich, which was a case involving the Department of Labor. The Labor Department's administration of the FLSA now, and I suppose at least since the Reich decision, was consistent with Reich. I think essentially what appellants are asking the court to do is to say that the administration of the FLSA with respect to home-to-work driving in the federal sector must be contrary to Adams and contrary to Bobo and contrary to even Reich. It must be consistent with essentially arguments of the Department of Labor advanced quite some time ago. If the legal landscape has changed, it's certainly changed since then. The controlling law is, well, Reich is controlling as far as the Department of Labor is concerned. That's not the issue here. But consistent with that, Bobo and Adams are controlling here. So there's essentially been no argument offered about why Bobo and Adams are wrong, other than essentially an approach that was offered in Bobo and Adams. And in that respect, the appellants are simply re-arguing the same arguments that were made and rejected before. And they haven't pointed out anything that this court overlooked in Bobo and Adams. And they haven't pointed out any. Well, they say that Adams overlooked, in effect, overlooked the regulations by not referencing regulations. Now, I understand your position is the regulations don't say anything that's particularly helpful to the appellants, and therefore it wasn't a case of the court overlooking it. But they do say, to be fair, I think, to Mr. Bernstein, that that's the problem with Adams, is that it fails to advert to regulations, which are, as he reads them. If we look solely at this court's opinion in Adams, there's always a certain level of detail in any opinion. The discussion of the regulations is, at least some of the regulations, or at least one of them is discussed in this court's opinion in Bobo. The trial court opinions in both Bobo and Adams got into some greater detail on the regulations. I assume that when this court decided Adams, it was aware of the trial court's discussion of the regulations. Well, the regulations were briefed to the court in Adams. Yes. They were in the briefs. That's right. And as I said, they were alluded to in the published opinion of the trial court. Right. But not in this court's opinion. That's right. And I think in that context, I would infer that the court was aware of the arguments concerning the regulations. The court did not say we think that the agency was wrong in issuing the regulations or that the regulations reflect an erroneous interpretation of the FLSA. It appears that the court was simply not overly impressed with the appellant's reliance on those regulations. Could I ask you, if you're done on that point, could you help me out with what the department's position is with respect to the agreement requirement of the, I think, 1996 amendment to the Portal to Portal Act? You understand what I'm talking about? Yes. It's unclear to me exactly what's encompassed by that requirement. What's your view? Well, I think what that statute says is that, I assume Your Honor is talking about what's referred to as the employer, the ECFA, E-C-F-A, the acronym we always refer to, but that was adopted to address, actually, as legislative history indicates, that was adopted to address situations like the one referred to in that opinion letter. Right. In fact, the legislative history adverts specifically to the opinion letter and says that this has created a problem. We have to try to work something out. So the question, then, is what was worked out? Now, on the specific, on the situations of that kind, what the statute basically says, in effect, is even if you have a situation of the specialized kind of driving, like these service employees, something akin to typically a seer's repairman or somebody whose inherent job is to drive from place to place and provide a service at these locations, what the Department of Labor had said at that point was that in the context of these service employees, that if they were required to drive their, repair their van or whatever they used on the job, to drive to their first appointment, first customer, at the beginning of the day straight from home, and drive back home in that vehicle from the last customer, the Department of Labor took the view that that home-to-work driving would be compensable in that situation. And what the statute specifically says on that situation, or I guess any analogous situation, because that's what they were concerned with, was that even in that situation, if this driving was subject to an agreement, they don't make clear exactly what they mean by agreement, but it would certainly include a collective bargaining agreement or an agreement between the employer and the employees that they would be doing this driving and that it would not be considered a work requirement or hours of work, that it wouldn't have to be considered hours of work. Because there had been many cases where that was the understanding between the employer and the employees. But couldn't in these cases that we have, this case we have today, couldn't that be similar? In other words, they could be dispatched from their home to a demolition site or whatever it is rather than going directly to the office to be dispatched. When people are specifically dispatched, as in the case of responding to an emergency, that's not the rules we're dealing with here. The OPM has separate rules about in what circumstances the time of driving to the emergency site is compensable. One of the reasons this case is very narrow is, as was true in Adams, we had a settlement where we resolved all the FLSA issues in the case other than the question of time solely spent home to work driving in a government vehicle. So this case then, just to make sure that I understand, this case deals only with, let's say, the ordinary day in which you drive to the ordinary place of work from home and from the ordinary place of work to home and that you aren't specifically directed to another location. That's what we're talking about, although I wouldn't necessarily say that it's the ordinary place of work. Principal place of work. We have situations that, not in this case, but there are other cases where there's something called field work where someone is assigned to work at a field location in the same general area, not talking about 10 hours away, for a period of time, maybe a few days or a week or two, and that becomes his workplace at that time. I see. But still, in other words, what we're talking about is commuting, typically commuting to the office, to the usual work site, and that's essentially what we're dealing with here. There's no claim or no evidence that these plaintiffs in their commutes were driving to other than their regular workplace. Presumably, though, maybe that doesn't determine the outcome of the case, presumably they were driving these loaded vehicles back and forth because they might be called upon. But otherwise, why would they be doing it? Right, that was the reason why they used the vehicles, so that the vehicles would be available in the event that they're called upon to respond. But your point is that in those cases, that's all been taken care of prior to the agreement or in the agreement? That's right. And this essentially is exactly the same situation as the situation that this court faced in Adams. We had the same kind of settlement involved, reserving the home-to-work driving issue as the only issue left. Is there anything in the record here with respect to the question of who pays for the vehicle, the fuel, the maintenance, the insurance, anything about any of those factors? I don't recall. I think it's in the record that the government pays for that. It's a government vehicle. And by the same token, the restrictions on the use of the vehicle is not a job restriction in terms of the work duties. Those are simply restrictions on you can't use government vehicles for personal use. So that's associated with the use of government property, not the nature of the job. So we have essentially no distinction, no factual distinction between the situation here and the situation in Adams. That I think is why appellants are asking that Adams be overruled. No error has been pointed out in Adams. I would note that the issue about the interpretation of the ECFA was raised, I think, as one of the appellant's arguments in Adams in a petition for a hearing on bunk. Obviously, the court's rejection of that petition did not come with an opinion, so I can't say specifically what the court's reaction was to that argument, but the petition was denied. And there's no issue here, a genuine issue, about deference to agency regulations. So there's basically no reason to overrule this court's prior precedent and no basis, therefore, to reverse the decision of the court below. The only other argument the appellant offers is a procedural one, which I don't know if I need to dwell on, in terms of the court's treating our motion for judgment on the pleadings as a motion for summary judgment. Well, we'll let the briefs handle that, since he didn't argue it this morning. So for these reasons, we believe that the decision of the court below is absolutely correct and should be affirmed. Thank you. If I may, a few points. First, as to the 1996 amendment, the amendment provides that where there is an agreement, employees may waive their right to be compensated, and the Labor Department recently issued proposed regulations saying precisely that. So where there is no agreement, and in this case, there is admittedly no agreement, under that amendment, the driving remains compensable. That amendment does not affect it at all. You say it's clear that there's no agreement here. That's what I was a little unclear about. If you look, Your Honor, at Judge Bush's decision, she says there is no agreement here, and therefore, that amendment doesn't apply. And Mr. Brilliant, in his argument to the Court of Appeals, never argued that the amendment applied. But in Adams, the Court of Appeals decided it did, and proceeded to base its entire opinion on a mistaken interpretation of the amendment. And that is simply what happened. Now, beyond that, Mr. Brilliant is mistaken when he says that insofar as the Labor Department is concerned, Reich is controlling. That is not the fact. Reich was a case that the Secretary lost in the Second Circuit after the District Court had ruled its way, and the Second Circuit said this home-to-work driving, dragging dogs back and forth is not compensable. That was the basis for the decision in Bobo in this court. Well, I will tell you this, that if Brand X had been on the books at that time, Reich would have been decided otherwise, and Adams would have been decided otherwise, and Bobo would have been decided otherwise, and the government proceeds to invoke Brand X all the time in this court, as Judge Mayer will recall, in Michael Simon Design v. United States, the government relied upon Brand X in Patterson, in Hudson. Brand X is, for the government, a way to defend agency decisions, and the only time that the government has decided Brand X doesn't apply is in this case, when in its capacity as an employer, the government is seeking to avoid liability, and that is what is going on in this case. The predicate of Brand X is that the agency has changed its position in its regulations since the earlier decision of the Court of Appeals. That doesn't seem to fit the facts of this case. That is not the case, Your Honor. That's not Brand X? If you look at Brand X, you will see. I looked at it this morning, as a matter of fact. I think I've described it accurately. If you will indulge me a moment, Your Honor, in that case. Let me just, let me outline very briefly what I understand to be the crux of Brand X. Agency, the Court of Appeals says this is the construction of the statute. Agency comes back, and in a Chevron Step 2, issuing regulations at Chevron Step 2, says, no, this is the way we read the statute. The Court of Appeals said, no, we previously decided that's not the correct reading. Supreme Court says, once the agency has come back, if Chevron Step 1 is not satisfied, you get to Chevron Step 2, then the Court of Appeals has to give deference to what the agency has done that occurred after the Court's first decision. Now, why is that applicable here? Because at page 983 of Brand X, Justice Thomas said that it matters not which came first, the agency's decision or the court's decision. It would be anomalous, he said, and I have the quote in my papers, it would be anomalous if you had a situation where it was a chicken and egg type situation. That's just his explanation for why general Chevron principles apply to this somewhat unusual setting that arose in Brand X. There's nothing surprising, certainly, about the general Chevron principle, and he's saying that you apply it in the converse situation as well, right? No. What I am saying is that the regulations of OPM, which say that driving is compensable, remain, and they prevail over the decisions of this Court at this time. Here is what Justice Thomas said. A contrary rule would produce anomalous results. It would mean that whether an agency's interpretation of an ambiguous statute is entitled to Chevron deference would turn on the order in which the interpretations issue. If the Court's construction came first, its construction would prevail, whereas if the agency's came first, the agency's construction would command Chevron deference. Yet whether Congress has delegated to an agency the authority to interpret a statute does not depend on the order in which the judicial and administrative constructions occur. And in this case, OPM's regulations that say driving is compensable remain on the books. They were subject to notice and comment, and they were based upon the Labor Department's view. Well, I think, sir, that's a sufficient answer to the question, and our time has expired. Thank you, Your Honor. Thank you very much.